Good morning. Our first case this morning is Empresa Cubana v. General Cigar, Mr. Goldstein. May it please the Court, David Goldstein on behalf of the appellant, Empresa Cubana del Tabaco, or Cuba Tobacco. The central dispute in this case concerns what the Second Circuit decided in its 2004 decision, what we refer to in our briefs as Empresa V, which I'll probably refer to as Empresa V, and what is the effect. Can I ask you a question at the outset? Sure. And I appreciate there are a lot of questions about what the Second Circuit decided and didn't decide and what you might have argued to them, didn't argue, and all of that. But can you try to separate these two things for me at the outset, and that is the question of statutory standing from the question of constitutional standing? Most of the arguments about standing here seem to have been framed in terms of what's required under the Lanham Act, but for you to come here, not to go to the TTAP, but for you to come here, you need constitutional standing, a concrete stake in something that we can somehow do something for you about. Can you describe what that is? Okay, sure. We had kind of a large section in our opening brief, which I actually don't think is necessary to establish either standing before the Board, which is statutory standing, or a separate standing in front of the Federal Circuit, because I think the issue is really whether there's statutory standing before the Board. But we did that not because we need to prove that or show that for standing, but we put in a section what we might call the real-life interests. And the point of that was the Board's decision, which seems so at odds with its precedents, seemed to have departed from that. Without saying, it seemed to have just assumed we can't do anything. We're here for sort of an intellectual exercise, advisory opinion, you know, a futile argument. The situation we're in is really not that different than the situation of any petitioner who's seeking to cancel a registration. The issues are unique, and they're complicated, and they're novel, but we're in the same situation as a party that comes in and the registrant says, if you have no standing, if you have standing, there's a procedural barrier or a preclusion barrier. Even if you get past that, you have a substantive barrier on the merits. But if you get past that, you still have to establish in front of the Board that you're entitled to a registration. Let me just try to focus. I'm sorry. You can't sell your product here. So what concrete stake do you have in whether somebody else is using the name of the product? The foreign policy of the United States, as set out in the CACR and in the 1996 OFAC policy letter, is that Cuban parties who cannot use their marks in the United States are authorized to register their marks here, and there's maybe a couple hundred Cuban marks registered here in the United States. The reciprocal is that although U.S. companies under the U.S. embargo cannot use their marks in Cuba, U.S. companies are allowed to register their marks in Cuba, and about maybe 6,000 U.S. marks are registered in Cuba. And the point of that is the government is essentially saying, we're going to protect each party's intellectual property in contemplation of the end of the embargo, so that if that situation arises, those Cuban parties can exercise the rights that they would have based on their registration. Is that all it is? Or if you get a mark registered here as a Cuban company, can you go and get a special license to pursue a trademark infringement? Yeah. I mean, for example, we just – Does that happen? Yeah. I brought a case in the Eastern District of Michigan. We own the mark. Cubatac owns the mark La Casa Del Habano, which is retail stores and cigar mark for Cuban cigars around the world. And a company opened in Michigan called La Casa De La Habana or something, and we brought a proceeding in that court. And it didn't go to judgment. It resolved itself. And we've done that in other – we did that in a third district court in New Jersey for a mark called, I think, something like Por El Habano. And those are all under special licenses that allow you to pursue those actions? To go into federal court, we need a special license, although since this case was brought, there's been a change in the CACR so that a Cuban party can go into court without a license. The attorneys need a license to get paid, a special license to get paid. But they changed that rule to allow enforcement of a right, so a trademark right. And, in fact, the government says – So even if you can't use your mark here, you can get somebody else's mark? In joint. In joint. Yeah, under Section 32 of the Act, a party with a registration can stop another party from using that mark if that mark is similar to – confusingly similar. I'm sorry. I just want to be clear about it. You can do that even without a special license. Is that right? With the registration, under the new general license of the CACR, you can initiate a litigation. In 1997, we needed and got a specific license to commence the federal action. We had the general license of – I know it's complicated. What's the new provision of the CACR that allows – I think it's 512, but I might be wrong. What I just understood you to say is that there's now a general license that authorizes your company, if you have a registration, to go to court without further legal permission. It's not if I have a registration if it's to enforce or protect the right. It's a general license beyond the trademark authorization. Does that include going to court to sue somebody for infringement of your trademark without further permission? Yes. Yes, that's right. Let me just – I want to be really clear about what I'm concerned about. I'm not aware of a case, and maybe you can give me one, in which a party comes to federal court, as you are now doing here, and says, my interest is in doing something that the law otherwise forbids. And therefore, even if you give me an order in my favor, I'm still forbidden to do the thing that I have a stake in. And I want to know, is that a description of this situation or not a description? No, I'm sorry. It's not for several reasons. The first reason is that what we're asking for is a board cancellation order. That's authorized. We're asking you to give us the authority to go back to the board to seek cancellation. That's authorized. We're also asking, subsequent to the board cancellation order, to get a registration. That's authorized. That's authorized under the general license. With the registration, we believe we can do two possible things. If the embargo is lifted, we can sell. We have a registration. General SCAR might oppose us, and we'll battle over who has priority, whether they have unclean hands, whether they got there first. And the second thing is we might, with a registration, be able to go into a federal court that's recognized the Well-Known Marks Doctrine and argue, again, now that we have a registration, which the government says is the way we obtain our trademark rights, which is what the impressive five said, is the only way you can obtain trademark rights. We would then go into federal court. So it's speculative in the sense that we don't know the answer. If the embargo doesn't allow you to do the latter, if we conclude it doesn't allow you to do the latter, does the former give you constitutional standing here? The former? The former. You said two things. The former was you just register the mark and you wait for the embargo to go. Is the denial of your procedural rights at the trademark board sufficient to give you constitutional standing here? Yes, because we have a concrete interest. Under constitutional article 3 standing, we have a concrete injury, which is that we can't register our mark because we can't cancel their mark because the board said we have no standing. And the remedy, the relief for that, is we will be able to register our mark. And that registration is not an abstract proposition. I think we used this in the Michigan case. It's not a worthless piece of paper. It has to have value. Otherwise, a U.S. foreign policy wouldn't be designed to protect this reciprocal intellectual property. Or if it was designed to do it, it wouldn't be carrying out that reciprocal protection. Now, you stayed the TTAB action so that you could go to the district court and on to the Second Circuit. Correct. Didn't turn out well for you. Now you want to go back. Should we see any inconsistency in those positions? No, because what happened was we went and sought to cancel the mark at a time when General Segar was basically barely selling. The district court addressed that issue. We took a cigar called Temple Hall, put a Cohiba band on it, sold a few of them. We went to the TTAB to cancel that and get a registration. They then did a massive national launch. They were a big launch. We can't get an injunction from the TTAB, so we went to federal court to get an injunction. In the federal court, we also asked for cancellation relief. If we hadn't, we would probably, if we tried to come back here, they would probably be arguing that it was a required element or transactionally barred under claim preclusion. They did not raise the CACR defense at that time. They waited seven years to raise it. It wasn't an election to go to federal court. We were stuck in federal court. What happened in federal court was instead of addressing the merits at the Second Circuit, instead of General Segar arguing the merits, they said, the district court can't grant the relief that it ordered. They won on that. The district court, the Second Circuit said that the acquisition of the ability to join them and the acquisition of the ability to cancel registrations is a right, privilege, and power to my clients, which is a property transfer. We argued that wasn't correct. The government argued that wasn't correct, but we lost on that. We're not challenging that. They then said, is there an authority for the district court to transfer that property, to give us the registration cancellation power? The court said, no. There's a limitation on judicial authority. There's no license authorizing the district court to do something that winds up with us having a property right. There's an implicit in my question is the sense that you may be seeking a second bite at the apple, but did you get the first bite? It's definitely a first bite because the IMPRESA 5 said, we can't get that bite seven years after we brought the action. They argued we can't get that bite, and the court agreed. You're in the wrong place to get that bite. The district court is unauthorized. There's two parts. Is it a property transfer? Yes. We thought no. The government thought no, but they said yes. Second, it's unauthorized. There's a limitation on judicial authority. There is no judicial authority to cancel that registration, but there is board authority. Under 515.527 and the OFAC ruling, the OFAC ruling we sought, our law firm sought, before we brought the Cuban tobacco case, the cohesive case. This is the August 1996 letter. Yes, the 1996 letter. We put in the record in 1997. That was the basis for us seeking cancellation. We put in the record on summary judgment. General Segar, for some reason, says we don't have that license.  It's a general license. Every Cuban party has that license. General Segar acknowledges that that license eliminates the barrier to standing. It cites the three cases that I've won or we've won in the board on behalf of Cuban parties in which the board explicitly said we have standing and cited to the OFAC policy letter in 527. General Segar says, well, that eliminated the bar of standing in those cases, but you don't have that license. Well, of course we do. We got it for this case. We filed it in 1997. I think it's like 742 maybe of the appendix is the original filing and 483 is the filing. The letter. What's that? 483 is the August letter. Yes. Then I also put in, in response to General Segar, towards the back of the appendix, the same letters that we put in on behalf of the other Cuban cigar company, Corporacion Habanos, in two different cases. That is the exact same letter because it is a general license. All Cuban parties who want to seek cancellation of a mark in contemplation of their register in their own mark or to protect their own interest in the mark have that right. We have that right. General Segar says, eliminates the bar of standing. I don't see anything wrong with that statement by General Segar. If we can cancel, then the board in Presser 5 never held the board can cancel, never addressed it. It wasn't relevant. It wasn't before then. If we can go before the board, we have a right to get a trademark registration if we can cancel under section 44E, which allows a foreign party to get a registration based on its Cuban mark. We would be going in on that basis. If we get that registration, we will be in a novel situation in the federal courts. The board certainly has no authority. Correct me on the details or maybe the general point, but my understanding is that for you to get a registration based on the foreign mark, you need to have a bona fide intent to use or some language like that. Currently, you can't use it. Is there some case law, and maybe you cited it and then you just remind me, that says the bona fide intent to use, which I guess lapses after six years, is present even if you're legally forbidden to use it? Yes, because at the five, six-year mark, we have to file a statement of use or a statement of excusable non-use. Maybe 50 times. The PTO has granted excusable non-use, extended the registration. We've renewed lots and lots of registrations based on that. We definitely have a bona fide intent to use, or the Cubans do. They're in the Caribbean. They have the premier cigars in the world. The Clojiba, which is why we're fighting, is considered their most prestigious cigar. The U.S. market is huge. Several of the board cases that found standing talk about how we've shown that the Cubans actually plan their strategies based on that. They advertise in U.S. cigar magazines. They advertise in English-language magazines. They do interviews. Cigar Casino, which we relied on a lot to prevail in the district court, does lots of interviews on Cuban cigars. So the Cuban cigar entities are always putting the Cuban cigars in front of the U.S. consumer in contemplation of the end of the embargo. Until the U.S. foreign policy changes, that's— Can I ask you, is it only in contemplation of that, or is there a cognizable interest in your getting Americans who travel to countries where you can sell your cigars to want them when they get there to Paris or wherever? I mean, there's nothing in the record about that. The district court made no findings about that. The Cubans certainly—the registrations of the marks and the battles— we brought 25 proceedings in the TTV, several in the courts— to protect those registrations are irrelevant to selling cigars overseas. So that activity is certainly in contemplation. Thank you, Mr. Pelosi. As you've consumed your time, we'll restore your rebuttal time and give Mr. Deutsch an extra three minutes if he needs it. Thank you. Good morning, and may it please the Court, I'm Andy Deutsch, representing the Appellee General Cigar Company. This litigation is 17 years old. It went through the federal courts at the election of Cuba Tobacco, who could have otherwise had the issues of a cancellation determined by the TTAB. The Second Circuit issued a definitive ruling that General Cigar's registration was valid and that Cuba Tobacco's attempted cancellation, if granted, would be something that was prohibited by the Cuban Asset Regulations. The fundamental flaw in Cuba Tobacco's argument today is to mischaracterize the Second Circuit as saying something about what the district court can or can't do as opposed to what the board can or can't do. What the Second Circuit did was to interpret the Cuban Asset Regulations, and that interpretation is as applicable if a cancellation is pursued before the board as if it is pursued in federal court. Well, the TTAB seems to say there's no standing because of preclusion in the Second Circuit, and yet they really don't do a standard preclusion analysis. Is that something we ought to send back to them to take a look at? I don't believe so, Your Honor. First, I think, is the point I just said. It's a 17-year-old litigation. Second, the issue of preclusion was argued below. Third, it's purely a question of law. And fourth, there really is no question about preclusion. The parties are the same. The claims are the same. We have in the appendix a comparison of the claims and the petition against the claims. Well, let me just ask you this. How could it possibly be the case, a tendentious form of question, that the Second Circuit, that whatever the Second Circuit said, that it was necessary to its decision to declare anything about the power of the board, which simply wasn't in front of it? The Second Circuit didn't say anything about the power of the board. What the Second Circuit did was to determine what the effect of the Cuban Asset Regulations are. The board's power to cancel and the federal court's power to cancel are identical. Well, I guess I'm not sure how we know that. The Second Circuit didn't say that, and the board doesn't seem to at least have squarely addressed the question whether the transfer language of the regulations applies equally to the court and the board. So at a minimum, it doesn't seem to me that the Second Circuit, A, decided it, and, B, even if it decided it, it couldn't possibly have been necessary to its judgment. Well, I don't agree with you, Your Honor. First of all, they did decide it. The court determined that the cancellation of general is a duly registered mark would have been was a transfer of property to the national in violation of the regulations. It didn't say by a board or by a court because it referred to the remedy of cancellation, which is, and there's plenty of precedent, including precedent from this court, an identical power vested both in the TTAB and in the federal courts. A determination that a cancellation, whoever does it, is a violation of the human embargo is binding on the board when the same parties and the same claims are presented. It's true the board didn't get to that point. The board decided that the case fails on the threshold issue of standing. We have argued it, and if the court were to go past standing, we think you would have to determine that there was preclusion on the grounds that the Second Circuit raised. But I'll address standing if you'd like us to focus on that because I don't think much was talked about that in the opening argument. The TTAB is acting consistently with its precedence in saying that there is a lack of standing. Let's assume that this whole 17-year litigation didn't exist, and Cuba Tobacco had just gone to the board and tried to register its mark, got the blocky notice, and then tried to cancel your mark. Are you saying that under the regulations in place, they wouldn't have standing to do that? I would say if there had never been a litigation before, I don't know how the board would have approached standing. The Second Circuit didn't deny that there was standing, and we would assume that if there's standing in federal court, there may well be standing in the TTAB. I think it would have failed on the next ground, which is the interpretation of the regulations. But of course, we are bound by the Second Circuit's determination. So you're saying that even without the preclusive effect, Cuba Tobacco can't go to the board and try to get General Segar's mark canceled? If you make the last 17 years of history vanish, which is what you're asking to do, then we would have to make the arguments in front of the board that we had made in front of the federal court because we would not have preclusion. We were addressing a moment ago a distinction between the court and the TTAB. Is there a distinction in the express statutory grant of ability to get a registration and to seek cancellation of a registration? The power to cancel is in two separate portions of the Lanham Act between the TTAB and the federal court. But the case law has said these are the same power. They've said the reason that 1119 exists is because if you go to federal court, you can get both injunctive relief and cancellation relief, which is more efficient. And that's exactly what Cuba Tobacco did. They went to where they could apply for the full relief, and they were turned down on both grounds. Now to turn back to the TTAB, make a false distinction with respect to what the Second Circuit ruled, and say we're now in total talk. We argue the same issues all over again because the Second Circuit obviously didn't say anything about what the board can do. It's a misreading of the decision, which is all about what the Cuban Asset Regulations hold. Can I ask you another question? It seems to me that there are at least two possible open issues with respect to whether the cancellation request is barred. One is this possible difference between the court and the TTAB doing it. The other is a possible difference between or among different grounds for cancellation so that, for example, if you were arguing, if the other side was arguing for cancellation because, say, you abandoned the property right, one could possibly think of that as a situation in which nothing is actually being transferred from you to them, whereas maybe other grounds are different. And you had somewhat, and the board didn't explore any possible differences with respect to the regulations, Cuban Asset Control regulations, among different grounds. Are we missing some analysis that might be relevant? I do not think so. As I said earlier, each one of the grounds raised in the petition were raised in federal court. They are identical. I don't believe we're getting a dispute from Cuba Tobacco on that issue. Under the Second Circuit's analysis and under the accepted view of what benefits a registration confers on a registrant, there is clearly a deprivation of property to the benefit of Cuba Tobacco no matter what the grounds of cancellation are. My client loses the prima facie evidence of registrability, validity, the right to have its mark declared and contestable, and all the other benefits that a registrant has over an ordinary user. If that's the case, then the logical following out of your argument is no Cuban company can go to the board and try to get a mark canceled because that would, in essence, be a transfer of property. I believe that is the logical consequence of this. So you believe that the regulations bar a cancellation action by Cuban companies? I believe that the Second Circuit was right, and the answer is yes. The Second Circuit, by the way, Has the board ever addressed that question? The board has not addressed that question. It sounds like the board has processed at least registration applications. I don't know if they've had cancellation actions. Well, there's a distinction, a real meaningful distinction between the license in the regulations that allows a Cuban entity to register a mark, which doesn't deprive someone else of a property right, and the power to cancel a registration, which does. The only thing that the general license in the Cuban regulations does is it allows a Cuban entity to register a mark, and my adverse counsel described that. But the logic of the Second Circuit decision, which is at least binding on these parties, I can't say what the board might say in a different case, is that a cancellation is a transfer of property, which the embargo regulations forbid. And I guess the Second Circuit said that the August 1996 letter from Treasury, which I guess everybody's treating as a special license, is procedural only and not in any way substantive. That's right. But the government filed an amicus brief, which is in the record in the Second Circuit, essentially arguing that that letter authorized Cuba Tobacco to undertake a cancellation of General Segarra's mark, and the Second Circuit rejected that view. The Second Circuit said that the embargo is broad and the exceptions are very narrow and they don't comprise. Suppose we didn't think that the Second Circuit's pronouncement on that was binding. Why in the world would the government's view of the content of its special license not be effectively determinative? Well, it's never effectively determinative. It would be the most persuasive, I would think, out of the Circuit. Well, why? I mean, it has power to grant special licenses. You may do the following transfers. If the government says, this is what we meant in this letter, how is that not a... Well, the government... Effectively determinative. I don't know that I'm prepared to fully re-argue this issue that it was decided by the Second Circuit, but I would say that there is a meaningful distinction, the one I just raised, between what the regulations permit, which is registration and renewal, and the cancellation of it. I think we would argue to the board that that is not... The government's interpretation is not binding. But these are the government's regulations, and this is the part of the government charged with administering these regulations. Under normal deference principles, don't we defer to their interpretation? You defer, but you don't say that's the last word. And there are a number of federal court decisions saying, although we defer to the government, this can't be sustained under a plain reading of the regulations. That's essentially what the Second Circuit said. It has to be plainly inconsistent with the language of the regulation, right? Yes, the Second Circuit... Where is it plainly inconsistent? It's plainly inconsistent... I know. I understand your argument about the preclusive effect of the Second Circuit. I think what I'm interested in is whether that's right. We can deal with whether the Second Circuit meant that or not. I just don't see in the regulations where people, where Cuban companies don't have the right to seek cancellation as part of their right, which I think you don't dispute, that they can register their mark. I think they're two entirely separate rights, and most particularly... Where in the regulations, in the embargo regulations, would you point to to suggest that they can't do that? I would point to the language itself related to the registration or renewal of marks, which is the applicable language. Cancellation is not in itself related to the registration of a mark. But in a circumstance such as this, where you have two parties seeking to register the same mark, aren't they inextricably tied? I guess I have to go back to the beginning. The interpretation of the Second Circuit is that there is a broad... and I believe it's correct, and I would argue this in front of the board or this court, for the issue being raised fresh, is that there is a broad prohibition and that the exceptions have to be read narrowly. That is consistent with the purpose of the embargo, which is to prohibit Cubans from benefiting from the United States... But if the government raised the exception to cover a cancellation proceeding, where in the language does it specifically bar a cancellation? It does not specifically bar... Well, then, doesn't under a preference principle, it gives the government the power to do that. If it's silent, the government can fill in the gaps. And unless they're plainly inconsistent, which it doesn't seem they are, we defer to that. I recognize the principles of deference under this circumstance, but the court, I think this court, where it's come before the issue for the first time, would also have to take into account not only the broad principles of the embargo, but the fact that Congress reauthorized it in the Libertad Act of 1996. Just looking at the broad policy considerations here, if Cohiba isn't protected here, does that mean that Coca-Cola and McDonald's are going to be subject to appropriation by a Cuban corporation on the island? I don't think so. I mean, obviously, the Cubans confiscated a great many trademarks over the history of the Casper regime. And that kind of justifies us doing the same? Is that what you're saying? Since 2006, as far as I'm aware, there's been no retaliatory action taken because of this decision. So the idea that there is a policy impact from the court, either the Second Circuit decision or affirming what TTAB has done, seems to me to be minimal. Can you clarify something for me? And that has to do with the nature of this August 1996 letter. And the question is, is that in fact itself a special license? Or is it, as its language suggests more than that, that it is a piece of advice about the meaning of the general license? It's written to say, here's what we think 527, the general license, authorizes. Is Treasury independently authorized to say, it doesn't matter what 527 authorizes, we have power in our discretion to grant you permission to go and effectuate a cancellation? I have not been, if you will, prepared to get deeply into the weeds of the CACR. There is a power vested in the Treasury of granting special licenses. Whether and to what extent it's bounded by exceptions or by language in the Enabling Act that doesn't allow it to grant certain special licenses, I'm really not equipped to say. I apologize for not being prepared on that point. I would conclude by saying we believe that indeed the ruling of the TTAB should be affirmed on standing grounds because Cuba Tobacco, under the Second Circuit, it's a fact they can't sell their cigars here, but under the Second Circuit ruling, they cannot acquire priority rights over my client's registration. Remember, most of the fighting here is about the first COHIPA registration. I'm sorry, Your Honor, do you have a question? Castro dies tomorrow and the whole prohibition goes away. How does that change all this? It doesn't change all this. My client would still have had the benefit of a vested, final federal judgment that declares it has prior rights. So were Cuba Tobacco to come in and say, okay, the embargo is over, the 2D would still stand as a barrier to its being able to register as a mocker to be in the same position as other applicants. There would already be a registered mock held by someone else on the principal register. If the courts have no further questions, I will let it sit down. All right. Thank you very much, Mr. Deutsch. Mr. Goldstein, we restored your three minutes of rebuttal. To clarify or address a couple of points, the Second Circuit never addressed the 1996 OFAC policy. Are you aware of any proceedings at the board where Cuban companies try to cancel marks as opposed to just register marks? Yes. There was the Ancus decision, which we cite, the Guantanamera decision, which we cite, the Senex decision, which we cite. Those were all oppositions. We brought a series of cancellations. Actually, one of them is pending before the board now. In those three oppositions, which are procedurally the same, standing is the same. Has the board ever suggested that the embargo prevents Cuban companies from trying to cancel marks because that would be a transfer of property? No. It wouldn't say that because it's a transfer of property under IMPRESA 5, but it's not in violation of the embargo because it's related to the registration of a mark under the policy letter. What Section 201 of the CACR provides is all of the following transactions are prohibited unless authorized by the Secretary through regulations, which is the CACR, or by rulings, instructions, licenses, or otherwise. The 1996 letter is either a ruling or it's an otherwise, but it's an interpretation of the general license. It's entitled to the strongest possible deference because it's the agency interpreting its own regulation in an area of national security and foreign policy. You don't view that letter as going beyond interpreting the 527 general license to itself be a specific license? It's not a specific license within the meaning of the regulations. It's an interpretation of a general license applicable to all Cuban parties cited in the three board decisions we cite in our briefing, which I mentioned, in which they say, and just to be, the board says, and just to be perfectly clear, just because the Cuban parties can't sell in the United States does not mean they don't have standing. See 515.527 and their interest in either getting a registration or protecting a mark in which they have an interest. In this case, our property interest, and that's one place where the board is completely wrong, where it says we have no property interest or the Second Circuit said we have no property interest. We have a trademark application. Under Lipton, that's a legitimate commercial interest, so under this board's precedent, that's an interest, and certainly under the CACR, that's an interest. The trademark application is a thing of value. We could not acquire that without Section 515.527 because it's clearly a piece of property and we clearly have it. There's some really broad language in the Second Circuit's decision that it seems like is the real stumbling block for you in this case, and it's that General Segar's legal right to the Cohiba mark has been established against Cupid Tobacco. If that's a definitive conclusion that they have their mark over you, then why doesn't that mean you have no standing and you have no interest in going forward? I'm glad you asked that because I had hoped to get to that earlier, and I see I'm over my time, but it's critical to understanding every time the court addresses General Segar's ownership, they do it in the context of their antecedent CACR ruling. So in the context in which a federal court cannot cancel or enjoin their registrations, and in the context in which we couldn't acquire the mark through the Well-Known Marks Doctrine, as between us, as matters stand, quote, as matters stand today, which is what the Second Circuit said, General Segar has all the indicia of ownership. It can use the mark, and we can't stop them. It has a registration, and the district court can't stop them. The Second Circuit never addressed either the OFAC letter, 1996 letter, or 5.527, in terms of whether or not the board is authorized to cancel. It said it's a property transfer. It said it's in violation of the embargo. It's in violation of the embargo because of the judicial limitation. The issue was never argued to them. All the government said in Zemeckis brief is 515.527 authorizes cancellation. It didn't say by the district court. We never argued by the district court because it doesn't authorize by the district court. In that one place, General Segar is wrong. The general concurrent powers to cancel between the courts and the board are not the same, and therefore all the ownership discussion is not necessary to the judgment. If you took it all out, if you deleted it... I appreciate that. Thank you, Your Honor. Thank you very much.